UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Shelley Jackson,

        Plaintiff,

   v.

New York State Department of Labor, Shawn Singh

        Defendants.

---

Shelley Jackson,

        Plaintiff,

   v.

New York State Department of Labor, Eric Nevid, Scarlet Ahmed,

        Defendants.

---

18-cv-4220, 20-cv-951 (NRM) (JRC)

**MEMORANDUM AND ORDER**

NINA R. MORRISON, United States District Judge:

    Plaintiff Shelley Jackson, proceeding *pro se*, brings these actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against the New York State Department of Labor ("DOL").[1] In both cases, Jackson alleges the Defendant subjected her to a hostile work environment, either through sex

---

[1] While Jackson named individuals in her complaints, no individual liability exists under Title VII, *see Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004), nor have any of the named individuals entered appearances in this action. To the extent that Jackson's claims can be interpreted as against Shawn Sing, Eric Nevid, or Scarlet Ahmed, they are dismissed.

1

discrimination or racial profiling. The cases were consolidated by this Court, and defendant moves for summary judgment on all claims.

For the reasons discussed below, the Court GRANTS Defendant's motion in full.

## BACKGROUND

The Court views the following facts "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

In considering the parties' motions, the Court has carefully reviewed the Defendants' Rule 56.1 Statement and has independently assessed the underlying record to determine whether there are genuine issues of material fact in dispute and whether summary judgment is appropriate. *See Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995))). The Court deems admitted those factual assertions that are not specifically controverted with citations to admissible evidence. *See* Local Civ. R. 56.1(c)–(d); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

As discussed further *infra*, Jackson has failed to submit a responsive Rule 56.1 Statement, instead submitting a one-page opposition generally taking issue with the manner in which the facts were characterized by Defendants.  *See* Pl.'s Opp to Defs.' Mot. for Summ. J. ("Pl.'s Opp."), ECF No. 81.  However, in light of Jackson's *pro se* status, the Court has conducted a thorough and independent review of the evidence submitted.

I.   **Facts Relevant to Jackson's Sex Discrimination Complaint**

Jackson, who identifies as Black and female, Compl. at 5, ECF No. 1,[2] began working at the DOL in 1994, Declaration of Joya Sonnenfeldt ("Sonnenfeldt Decl."), Exhibit A, Deposition of Shelley Jackson ("Jackson Dep."), at 7, ECF No. 84-5.  When she worked in the Flushing office, where the relevant incidents took place, she worked as an administrative assistant on the Unemployment Insurance ("UI") team.  *Id.* at 8–9.  Her duties included tasks like typing and mailing.  *Id.* at 10.  From 2014 through 2016, Jackson was supervised by Shaji Thomas.  *Id.*; Declaration of Jennifer Williamson, ("Williamson Decl."), ECF No. 84-6, ¶ 4.  In 2016, she was supervised by Kurian Jose for two weeks of December 2016.  Williamson Decl. ¶ 5.  Then Sengan N'Jie supervised her until June 2017.  *Id.* at ¶ 6.  And starting in June 2017 until 2022, she was supervised by Errol Ferguson.  *Id.*  According to Plaintiff, Shaji Thomas was of Indian descent and Errol Ferguson was Black.  Jackson Dep. at 13.

---

[2] Pincites refer to page numbers generated by CM/ECF, and not the document's internal pagination.  Additionally, as this action involves two consolidated cases, the ECF numbers refer to the document number relating to the case number 18-cv-4220.

3

Jackson claims that on November 1, 2017, Jackson Dep. at 30–32, the cleaner, Shawn Singh, walked into the women's bathroom without knocking, *id.* at 26. She was at the sink and "He didn't say anything. . . . I had to leave the restroom because he was going to still stay in there." *Id.* She reported the incident to her supervisor at the time, Ferguson. *Id.* at 34. Jackson says that this was the second time Singh had engaged in such conduct, although she cannot remember when the first such incident occurred. *Id.* at 30–32. She says (but does not explain) in her opposition that she also complained to her previous supervisor, Thomas, about the first incident. Pl.'s Opp. ¶ 3. Ferguson told Jackson he would take care of it, and Singh did not walk into the bathroom unannounced again. Jackson Dep. at 43.

The day after she complained to Ferguson, Singh picked up the trash can next to Jackson's desk and threw the trash on the ground. *Id.* at 43–44. On November 28, Jackson overheard Singh joking to someone that he hopes he does not walk into the bathroom while someone is on the toilet. *Id.* at 45. On December 1, she overheard Ferguson and Singh joking about "catching someone on the toilet, walking into the ladies' room and take two steps slowly and then knock. They [were] making a joke out of it." *Id.* at 39. In her deposition, Jackson conceded that she did not know if they were talking about the women's restroom or a restroom in general. *Id.* at 40. Jackson also alleges that Singh blocked her in the hallway two times so she could not get around him. *Id.* at 52–53. Singh was a porter provided to the Department of Labor through a contracting agency, Goodwill Industries. Declaration of Stuart P. Marcus ("Marcus Decl."), ECF No. 84-1, ¶¶ 7, 10. "Goodwill Industries places and supervises

4

individuals with disabilities and other barriers to employment." *Id.* ¶ 5. Singh ceased working at the Flushing office in August 2018. *Id.* ¶ 12.

Except for the email to Ferguson on November 1, 2017, Jackson cannot recall if she complained again about Singh's behavior (the trash can incident or the subsequent joking with Ferguson). Jackson Dep. at 34, 44–46. She filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in February of 2018, and was issued her dismissal and notice of rights in April 2018. Sonnenfeldt Decl., Ex. B (EEOC Compl.), ECF No. 84-5; Compl. at 8–9. She filed this Complaint in 18-cv-4220, (the "Sex Discrimination Complaint"), proceeding *pro se*, alleging a violation of Title VII of the Civil Rights Act of 1964, on July 23, 2018. *See* Compl.

## II. Facts Underlying Jackson's Racial Profiling Claim

Plaintiff alleges that on October 4, 2018, she was followed into the mailroom by Eric Nevid, a member of the Division of Employment and Workforce Solutions ("DEWS") team, which was housed in the same building as the UI team. Jackson Dep. at 70. Jackson identified Nevid as White. Sonnenfedlt Decl., Ex. C (ECF No. 84-5), at 142. Nevid stood behind her as she stuffed envelopes and letters in the mailroom. Jackson Dep. at 71–72. He stood there until she left. *Id.* According to Plaintiff, it was not possible he was waiting to use the mail machine, and Nevid never used the mailroom, as he has assistants and clerical staff do that work for him. *Id.* at 73. She said he never blocked her, touched her, or told her to leave the mailroom. Dep. at 76–77. She indicated that "it was kind of annoying. [She] couldn't work with someone standing there wither their arms folded." *Id.* at 76. Jackson believes that

5

he followed her into the mailroom. *Id.* at 74. She left the mailroom and came back later that day to finish her task. *Id.* at 77. She told her supervisor, Ferguson, to tell Nevid that she was allowed to use the mailroom. *Id.* at 78–79. Nevid stopped following her after she complained to Ferguson. *Id.* at 97.

In her deposition, Jackson stated that Nevid did not want her in the mailroom, and he called security to watch her while she was in there. *Id.* at 77–78. When asked why Nevid did not want her in the mailroom, she said that she did not know. *Id.* at 78; *see also id.* at 95 (when asked why she believed Nevid's actions were due to her race, she replied that she didn't "know what his intentions were").

Jackson did not say that she ever saw Nevid call security on her, or that she was informed he was calling security on her. *Id.* at 82. However, numerous times while she was in the mailroom, security came in the mailroom as well. *Id.* at 82–83. No security guards ever said anything inappropriate to her, told her to leave, or prevented her from doing her work. *Id.* at 85–86.

Jackson also claimed that Scarlet Ahmed, who worked under Mr. Nevid, followed her into the mailroom. *Id.* at 87. Similarly, Ahmed did not say anything to Jackson or interfere with her work. *Id.* at 88. Jackson never had any other problems with Ahmed. *Id.* In her deposition, Jackson said that "when they saw me in [the mailroom], they [would] come in there." *Id.* at 89–90. It is unclear if she was referring to Ahmed, Nevid, or security. At another point in her deposition, she stated that she could not remember if someone was in there every time she went in. *Id.* at 90.

6

Jackson cannot recall if she told her supervisor about other people, besides Nevid, following her into the mailroom. *Id.* at 97–98.

Jackson also contends said that Kurian Jose, a co-worker who was at one point in 2016 her temporary supervisor for two weeks, once made racial jokes while he was her co-worker. Specifically, he said that Jewish people are "cheap" and Greek people are "crazy." *Id.* at 90–92. These were not directed towards Jackson. *Id.* She also claims that that while he was her supervisor in 2016, he would "harass [her] for no reason. He would just complain if I [took] a day off, if I [was] sick." *Id.* at 93. She reported this to N'Jai. *Id.* at 93–94.

Jackson filed a complaint with the New York State Division of Human Rights on December 28, 2018, and it was dismissed by said agency on July 3, 2019. Sonnenfedlt Decl., Ex. C, ("NYSDHR Determination"), ECF No. 84-5, at 143–45. Jackson filed this Complaint, (the "Racial Profiling Complaint"), proceeding *pro se*, alleging violations of Title VII of the Civil Rights act of 1964 in case number 20-cv-951, on February 20, 2020. *See* 20-cv-951, ECF No. 1.

### III. Post-Complaint Factual Developments

The Flushing office where Jackson worked at the time of the events described above was closed in 2022. Marcus Decl. ¶ 13. In her deposition, Jackson said that she never had her salary docked, suffered a demotion, had any unsatisfactory ratings at work, nor was she fired. Jackson Dep. at 100–01. She did claim that she was denied remote working days, but that was after both lawsuits had been filed. *Id.* at 100. She left the Department of Labor on July 6, 2023, and started at the Department

7

of Education on the same day. Jackson Dep. at 101–102. She indicated that she was not terminated from her DOL position. *Id.* at 102. Her position at the Department of Education is an Administrative Assistant. *Id.* She did claim in her opposition papers that while she was at the Department of Labor, she was the only employee in her department who "had [her] remote days stopped." Pl.'s Opp. ¶ 7.

## IV.   Procedural History

On May 4, 2023, Defendant filed a motion to consolidate the Sex Discrimination case and the Racial Profiling Case. *See* Motion to Consolidate Cases, ECF No. 38. This Court granted that motion on May 31, 2023. On August 12, 2024, Defendant filed a combined motion for summary judgment addressing the claims in both consolidated cases, asking this Court to dismiss all claims.[3] *See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF. No 84-8. Broadly, Defendant argues that Jackson has not proffered sufficient evidence to make out a hostile work environment claim in either the Sex Discrimination Case or the Racial Profiling Case.

Along with its motion for summary judgment, Defendant served on Jackson the text of Federal Rule of Civil Procedure 56 and Local Rule 56.1. *See* Letter re Service of DOL's Summary Judgment Motion, ECF No. 80. Jackson's Opposition, however, consists of a single page which largely takes issue with Defendant's

---

[3] On July 9, 2024, along with her opposition, Jackson sent a letter to the noting that she did not receive an email about a briefing discussion on March 12, 2024. *See* July 9, 2024 Letter to Judge Morrison, ECF No. 82. It is unclear what discussion Jackson is referencing. It may be Defendant's March 18, 2024, letter requesting a briefing schedule from this Court. *See* ECF No. 79. There was no discussion on March 12, 2024.

8

characterization of the facts, and contains no 56.1 statement in opposition, as required by Local Rule 56.1(b).

While *pro se* litigants are not excused from meeting the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56.1, where a *pro se* plaintiff fails to submit a responsive Local 56.1 statement, a district court still retains discretion to consider the substance of that plaintiff's arguments by looking to the evidentiary record presented to it. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001) (noting that the district court exercised its discretion "not to apply Local Rule 56.1 to [plaintiff's] failure to file a counter statement"). Accordingly, this Court considered both Jackson's and the DOL's arguments upon a thorough review of the evidentiary record.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). A fact is material "when its resolution 'might affect the outcome of the suit under the governing law.'" *SCW W. LLC v. Westport Ins. Corp.*, 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (ADS) (AKT) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering a summary judgment motion, the Court "is required to view the record in the light most favorable to the party against which

9

summary judgment is contemplated and to resolve all ambiguities and draw all factual inferences in favor of that party." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008).

"The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact." *Thorpe v. City of New York*, No. 19-cv-5995 (CM) (RWL), 2021 WL 3811238, at *4 (S.D.N.Y. Aug. 25, 2021). "Once such a showing has been made, the non-moving party must present 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). "The party opposing summary judgment 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). "Finally, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant." *Id.*

If a party is appearing *pro se*, the Court must interpret their papers liberally and read them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted). Additionally, "the *pro se* litigant should be given special latitude in responding to a summary judgment motion." *Knowles v. N.Y. City Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995) (JGK) (internal quotation marks and citation omitted).

## **DISCUSSION**

**I.     Sex Discrimination Claim (No. 18-cv-4220)**

To allege a prima facie case of employment discrimination, a plaintiff must produce evidence showing: "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002)

Jackson has not alleged that she suffered any adverse employment action, as she did not allege that there was any "materially adverse change in [her] terms of and conditions of her employment." *Galabaya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Here, Jackson acknowledged that the DOL had not taken any action towards her which could be considered materially adverse at the time she filed her Complaints. *See* Jackson Dep. at 100–01 (acknowledging that there was not a promotion she was denied or had any loss of compensation).

However, this does not end the inquiry. This Court must determine if Jackson has put forth sufficient evidence to meet the summary judgment standard for a hostile work environment. "A hostile work environment claim requires a showing [1]

11

that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (alteration in original) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.* The alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Litlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (internal quotation marks omitted). Courts "must consider the totality of the circumstances" in the inquiry, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). Additionally, "[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). It is true that "[f]acially neutral incidents may be included . . . among the 'totality of the circumstances' that courts consider in any hostile work environment claim," but the plaintiff must still

offer "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Alfano*, 294 F.3d at 378.

Jackson has not put forth sufficient evidence at summary judgment that there is an issue of material fact as to whether Singh created a hostile work environment. Even if a jury were to accept Jackson's allegations as true, at most, they consist of a few episodic moments with regard to Singh: coming into the bathroom without knocking, blocking her way twice, knocking over her trash can, and joking with her supervisor once about going into the bathroom while other people are present. These actions do not provide any basis for a reasonable juror to conclude that the actions were so pervasive that "that the terms and conditions of her employment were thereby altered." *Alfano*, 294 F.3d at 373. Courts have found that conduct in the workplace which is much more egregious than Jackson's allegations still fails to constitute a hostile work environment. In *Littlejohn*, the Second Circuit dismissed a hostile work environment claim where the plaintiff alleged a supervisor "made negative statements" about her, "was impatient and used harsh tones" with plaintiff, "distanced herself from [plaintiff] when she was nearby," "declined to meet with [plaintiff], "replaced [plaintiff] at meetings," "wrongfully reprimanded [plaintiff]," "increased [plaintiff's] reporting schedule," made a sarcastic comment to plaintiff, and told plaintiff she did not "understand the culture" at the employing agency. 795 F.3d at 321; *see also Kilgannon v. Soc. Sec. Admin.*, No. 20-cv-1891 (MKV), 2021 WL 4523505, at *8 (S.D.N.Y. Sept. 30, 2021) ("[P]hysical actions like blocking someone's

13

way in an office do not create a hostile work environment where there is no allegation of physical contact.")

Additionally, the fact that the alleged conduct was perpetrated by a contractor, not Jackson's supervisor, forecloses her claim of a hostile work environment on this record. "[T]he law is clear that where the alleged harasser was a non-supervisor, the employer will only be liable if they were 'negligent in controlling working conditions.'" *Kilgannon*, 2021 WL 4523505, at *8 (quoting *Lekettey v. City of New York*, 637 Fed. App'x 659, 662 (2d Cir. Feb. 8, 2016) (summary order)). Mr. Singh was a contractor, and "in the Title VII context . . . the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a high degree of control over the behavior of the non-employee, and (2) the employer's own negligence permits of facilitates that non-employee's discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 38–39 (2d Cir. 2019) (internal quotation marks omitted). Plaintiff only alleges one time that she reported Singh's behavior to her supervisor, and she acknowledges that her supervisor said he would talk to Singh, and Singh never again went into the bathroom without knocking. *See* Jackson Dep. at 34, 43–46. Thus, she has not shown either that her employer exercised a high degree of control over Singh, nor that her employer acted negligently with regard to Singh's alleged discrimination.

The fact that Plaintiff once overheard her supervisor, Ferguson, joking about knocking before going in the bathroom is not sufficient to create a hostile work environment attributable to him. "Although a single incident can create a hostile work environment, the incident must have been extraordinarily severe and therefore

14

this standard is reserved only for the most egregious conduct." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 103 (2d Cir. 2020) (internal quotation marks omitted). This standard was met, for example when plaintiff was "punched in the ribs," "temporarily blinded by having mace sprayed in his eyes," and "covered . . . with shaving cream." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 213 230 (2d Cir. 2004). In contrast, the Second Circuit has held that a supervisor making a crude comment about a colleague's appearance and then "deliberately touch[ing] [her] breasts with some papers that he was holding in his hand" was not sufficient to create a hostile work environment. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Other cases in which courts have found that Plaintiff sufficiently alleged facts to proceed with a hostile work environment claim involve conduct that is far more egregious and pervasive those presented here. For example, a court has found an inference of a hostile work environment when a teacher alleged, *inter alia*, that supervisors gave her poor performance reviews, placed her on a Teacher Improvement Plan (which is a "precursor to either receiving an unsatisfactory rating, the commencement of proceedings to terminate employment, or both"), reassigned her to a class that was more difficult to manage, denied her support managing that class, and solicited students to make false allegations about her performance all in a plot to then have her fired. *Clarke-Green v. New York City Dep't of Educ.*, 17-cv-778 (RRM) (VMS), 2019 WL 13149583, at *1, 11 (E.D.N.Y. Mar. 20, 2019) (internal

15

quotation marks omitted); *see also Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 538 (S.D.N.Y. 2008) (CM) (denying summary judgment where plaintiff alleged supervisor assaulted him at least twice, made derogatory comments about plaintiff's sexual orientation multiple times, and remarked on plaintiff's age several times).

This Court therefore agrees with Defendant that Jackson has not presented sufficient evidence to allege, as a matter of law, a hostile work environment. Thus, her cause of action seeking relief based on sex discrimination, No. 18-cv-4220, must be dismissed.[4]

## II.     Racial Profiling Claim (No. 20-cv-951)

Just as with Jackson's Sex Discrimination Claim, as she asserts no adverse action occurring prior to her filing of this Complaint, Jackson's only possible claim under Title VII as to the Racial Profiling Claim is one that alleges a hostile work environment. Here, Jackson claims that Nevid stood behind her when she was in the mail room, and "it was kind of annoying. [She] couldn't work with someone standing there with their arms folded." Jackson Dep. at 76. She also alleges that Ahmed and security guards would go into the mail room when she was in there. *See id*. at 82–83, 88. She specifically said that she did not "know what his intentions were" when asked

---

[4] Defendant argues that any of Singh's behavior prior to May 3, 2017, should not be considered as Jackson's EEOC Complaint was not filed until February 17, 2018, and are therefore any complaints about behavior more than 300 days prior to that date are untimely. *See* Def. Mot. at 18–19. As the Court finds that summary judgment for Defendant is warranted even considering all of Singh's alleged actions, it declines to rule on this argument.

16

if she thought he was following her because of her race. *Id.* at 95. Additionally, Jackson alleges that while he was her co-worker, Kurian Jose said that Jewish people are "cheap" and Greek people are "crazy," *Id.* at 91–92, and while he was her supervisor for two weeks in 2016, he would "harass [her] for no reason. He would just complain if I [took] a day off, if I [was] sick," *id.* at 93. This Court agrees with Defendant that Jackson's are not sufficient to show, as a matter of law, a hostile work environment.[5]

Courts in this Circuit regularly dismiss hostile work environment claims in cases where plaintiffs allege far more egregious actions than those at issue here. *See, e.g.*, *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 235 (E.D.N.Y. 2014) (MKB) (finding that a supervisor "following [p]laintiff into a garage in a menacing manner, and threatening to charge [p]laintiff with insubordination for refusing to remove a window covering from her office" does not constitute a hostile work environment); *Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 472–73 (S.D.N.Y. 2013) (PAE) (dismissing a case at the pleading stage where the plaintiff alleged that she was subjected to excessive scrutiny, her boss would "frequently stand in the area and stare at [plaintiff] in an effort to intimidate her," she received negative performance reviews, and was moved to a poorly ventilated, windowless office). Additionally,

---

[5] Defendant argues that Jose's behavior prior to March 3, 2018, should not be considered by this Court as Plaintiff filed her NYSDHR complaint in December of 2018, and any claims regarding this behavior are therefore untimely. Def.'s Mot. at 24–25. Because this Court concludes that, even considering those actions, Defendant is entitled to summary judgment as a matter of law, it declines to pass on the timeliness of Jackson's claims.

17

Jose's lone remarks — which were not directed towards Jackson nor a member of a group to which Jackson belongs — cannot create a hostile work environment, as "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).  In contrast, the Circuit found that a triable issue of fact existed for a hostile work environment claim where a supervisor "constantly made racially derogatory remarks" including using a racial slur and saying that "the only other job you [Hispanic] people can do is sweep the floors in Mcdonald's." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570–71 (2d Cir. 2000) (alteration in original).

Even assuming, *arguendo*, that the actions of Jackson's colleagues — following her into the mailroom or harassing her about taking a day off — did create a hostile work environment, this Court finds no facts which could lead to an inference that these actions were race-based.  The Second Circuit has instructed that there must be "some circumstantial or other basis for inferring that incidents [race]-neutral on their face [are] in fact discriminatory." *Alfano*, 294 F.3d at 375.  Jackson has proffered no evidence, direct or circumstantial, that her being followed into the mail room — or Jose complaining about her taking days off — was due to her race.

Therefore, because Jackson has failed to adduce any facts to support a hostile work environment claim in her cause of action asserting unlawful racial profiling (No. 20-cv-351), the Court grants Defendant's summary judgment motion.

18

### III. Constructive Discharge

In Jackson's opposition to summary judgment, she raises for the first time a constructive discharge claim. Specifically, she writes:

> I didn't voluntarily leave my position at DOL. I couldn't work due to a hostile environment it became intolerable to work there. It was constructive discharge. I suffered emotional distress. I was the only employee in UI Tax who had my remote days stopped. I also submitted doctors note[s] in reference to me working remotely.

Pl.'s Opp. ¶ 7. Jackson filed her lawsuits on July 23, 2018, and February 20, 2020. *See* ECF No. 1 (18-cv-4220), ECF No. 1 (20-cv-351). Jackson left the DOL on July 6, 2023, Jackson Dep. at 101. A constructive discharge claim stemming from a 2023 change in employment is its own, separate, claim, one that was never raised in Jackson's complaints. *See Chin v. Port Auth.*, 685 F.3d 135, 157 (2d Cir. 2012) ("Discrete acts such as termination . . . give rise to a freestanding Title VII claim with [their] own filing deadline." (internal quotation marks omitted)). Even though Jackson is proceeding *pro se*, and this Court must interpret her filings liberally, she cannot assert an entirely new claim — which accrued after her filing of these suits — in her opposition to summary judgment. *See Oyewo v. Lahood*, 515 Fed. App'x 10, 11 (2d Cir. 2013) (summary order) (holding that a "[*pro se* plaintiff] has abandoned her alternative work schedule claim by raising it for the first time in opposition to [defendant's] motion for summary judgment"); *see also Wright v. Jewish Child Care Ass'n of N.Y.*, 68 F. Supp. 3d 520, 529 (S.D.N.Y. 2014) (NRM) ("[Plaintiff's] current status as a *pro se* litigant does not allow her to assert new claims at this late stage.").

19

Thus, this Court will not consider Jackson's newly asserted claim that her 2023 change in employment was a constructive discharge.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment in full. Both of Jackson's consolidated cases, Nos. 18-cv-4220 and 20-cv-951, are dismissed. The Clerk of Court is respectfully directed to enter judgment, close the cases, mail a copy of this Memorandum and Order to the *pro se* Plaintiff, and note the mailing on the docket.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.                               */s/ Nina R. Morrison*

                                          NINA R. MORRISON
                                          United States District Judge

Dated: Brooklyn, New York
       March 31, 2025